**ACTION ON SMOKING AND HEALTH, Petitioner,**

v.

**CIVIL AERONAUTICS BOARD, Respondent.**

**ACTION ON SMOKING AND HEALTH, Petitioner,**

v.

**CIVIL AERONAUTICS BOARD, Respondent.**

**ACTION ON SMOKING AND HEALTH, Petitioner,**

v.

**CIVIL AERONAUTICS BOARD, Respondent.**

**ACTION ON SMOKING AND HEALTH, Petitioner,**

v.

**CIVIL AERONAUTICS BOARD, Respondent,**

**Air Transport Association of America, Transamerica Airlines, Inc., Intervenors.**

**Nos. 79–1044, 79–1095, 79–1754 and 81–2023.**

**United States Court of Appeals, District of Columbia Circuit.**

**Jan. 6, 1984.**

See also 699 F.2d 1209; 713 F.2d 795.

John F. Banzhaf, III, Paul N. Pfeiffer, and Athena Mueller, Washington, D.C., were on the Application and Supplemental Application for Attorneys' Fees, for petitioner.

Lewis K. Wise and Theodore M. Grossman, Attorneys, Department of Justice, Washington, D.C., were on the Oppositions to Petitioner's Application and Supplemental Application for Attorneys' Fees, for respondent.

Before WRIGHT and MIKVA, Circuit Judges, and BAZELON, Senior Circuit Judge.

Opinion for the Court filed by Senior Circuit Judge BAZELON.

BAZELON, Senior Circuit Judge:

Under the Equal Access to Justice Act[1] (EAJA), Action on Smoking and Health (ASH) is entitled to attorneys' fees for its successful challenge of Civil Aeronautics Board (Board) regulations concerning smoking aboard commercial aircraft.[2] ASH has filed its main application requesting $59,804.38 in fees and expenses plus an upward adjustment.[3] In addition, ASH has filed a supplemental application for $18,433.75 in fees[4] plus an upward adjustment for work

---

1. 28 U.S.C.A. § 2412 (West Supp.1983).

2. *See Action on Smoking and Health v. CAB,* 699 F.2d 1209 (D.C.Cir.1983).

3. The request in the main application was allocated as follows:

| | Requested Hours | Requested Rate | Lodestar |
|---|---|---|---|
| John F. Banzhaf (Exec. Director) | 72.0 | $110 | $ 7,920.00 |
| Paul N. Pfeiffer (Gen. Counsel) | 214.5 | $100 | $21,450.00 |
| Athena Mueller (Staff Counsel) | 181.5 | $ 75 | $13,612.50 |
| Peter N. Georgiades (Former Gen. Counsel) | 304.1 | $ 55 | $16,725.50 |
| Expenses | | | $ 96.38 |
| TOTAL: | | | $59,804.38 |

4. The supplemental application requested the following allocation:

| | Requested Hours | Requested Rate | Lodestar |
|---|---|---|---|
| Banzhaf | 76.50 | $110 | $ 8,415.00 |
| Pfeiffer | 79.75 | $100 | $ 7,975.00 |
| Mueller | 27.25 | $ 75 | $ 2,043.75 |
| TOTAL: | | | $18,433.75 |

performed in connection with its request for fees and an emergency order issued by this court.[5] The Board concedes that ASH is entitled to fees, but opposes the main application, arguing (1) that ASH has sought fees for work unrelated to the claims on which it prevailed; (2) that ASH has requested hourly rates in excess of the $75 hourly maximum specified in the statute; (3) that ASH has failed to document adequately the hours of attorney time requested; and (4) that ASH has failed to eliminate unproductive or duplicative hours from the application. We find that, with one minor exception, the requested fees do relate to the claim on which ASH prevailed. We also find, however, that ASH has requested hourly rates above the statutory ceiling; that it has submitted inadequate documentation; and that it has not eliminated duplicative hours. Accordingly, we are compelled to reduce the requested award in the main application to $35,460.63 for legal services. In addition, we award a ten percent upward adjustment to account for inflation and the long delay between the rendering of services and payment, and to reflect the successful result obtained.[6]

The Board also argues that this court lacks jurisdiction to consider the portion of the supplemental application relating to this court's emergency order. The Board also objects that ASH is not entitled to fees for its work on the fee application. Since we agree that we lack such jurisdiction and that much of ASH's work on the fee application is not compensable, we award only $3,843.75 on the supplemental application; we decline to make an upward adjustment for this work. ASH is therefore entitled to a total of $42,881.07.

---

**5.** See *Action on Smoking and Health v. CAB*, 713 F.2d 795 (D.C.Cir.1983).

**6.** In addition, we award $40 of the $96.38 requested for expenses.

**7.** 14 C.F.R. §§ 252.1a–252.3, 252.5 (1980).

**8.** 14 C.F.R. § 252.1 (1980).

**9.** 14 C.F.R. § 252 (1983).

## I. MAIN APPLICATION

### A. Background

In 1979, ASH challenged newly promulgated CAB regulations ER–1091[7] and ER–1124[8] as inadequately protective of the rights of non-smoking airline passengers. This court issued six sixty-day stay orders based on the Board's representations that they were proceeding with consideration of more stringent regulations. Ultimately, over two years later, the Board promulgated ER–1245,[9] a regulation that eliminated three major protections afforded non-smokers by the earlier challenged rules.[10] ASH challenged this new rule, claiming that it failed to provide an adequate statement of basis and purpose for the rescission of the three earlier protections. In addition, ASH claimed that the Board's rejection of three proposed regulations was without adequate basis or purpose.[11] This challenge to ER–1245 was consolidated with the earlier appeal. ASH prevailed on all claims, and ER–1245 was vacated.

### B. Separability of Claims

The Board argues that 340.1 of the 772.1 hours of attorney time claimed by ASH should be disallowed because those hours were expended on the 1979 challenge to ER–1091 and ER–1124. Under the EAJA, fees may be awarded only to prevailing parties.[12] The Board claims that ASH was a prevailing party only with respect to the 1981 regulations. Since the 1979 challenge was never resolved, the Board contends, ASH cannot be compensated for hours expended on the earlier appeal. We find the Board's contention without merit.

"In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and

---

**10.** See *Action on Smoking and Health v. CAB*, 699 F.2d 1209, 1216 (D.C.Cir.1983).

**11.** See *id.* at 1217–19.

**12.** 28 U.S.C.A. § 2412(d)(1)(A) (West Supp. 1983).

legal theories." [13] Legal work in such cases can be easily compartmentalized. In such cases where "the claims asserted 'are truly fractionable,' " counsel should be compensated only for work on those distinct claims that prevailed.[14]

In this case, however, the entire litigation centered on a set of common issues. Although the Board put forward a plethora of more-or-less stringent regulations and proposals, ASH maintained a consistent argumentative theme: the rights of non-smoking airline passengers were, to a greater or lesser extent depending upon the Board's particular permutation of the moment, being inadequately protected. As the Board concedes, the adoption of ER–1245 "was the culmination of a rulemaking proceeding that began in 1976...." [15] Both the 1979 and 1981 challenges "involve[d] a common core of facts" [16] and were "based on related legal theories." [17] These two claims, which the court subsequently consolidated into a single appeal, were part of a continuous process of regulation on a single topic. They were "all part and parcel of a single matter." [18] Hence, we decline to disallow categorically the hours expended on the 1979 appeal.

■ The Board also argues that ASH is not entitled to compensation for its work supporting the Board's position against the intervenor's claim that the Board had no power to regulate smoking aboard aircraft.

ASH contends that its work was in the interest of the air traveling public and that it alone cited a precedent which this court relied upon in its opinion. We agree with the Board that ASH cannot be considered a "prevailing party" on an issue on which both ASH and the government took the same position.[19] At the very least, the Board's position on this issue was "substantially justified" and, consequently, fees cannot be awarded on that issue under the EAJA.[20] ASH's work on this issue, however, appears to have constituted only a very small proportion of their total effort. In all, approximately three pages of the ASH reply brief are devoted to this issue. Hence, while this time is not compensable, its effect on the application is minimal; it will be reflected in our consideration of the affidavit of Mr. Pfeiffer, the lawyer primarily responsible for preparation of the reply brief.

### C. *The $75 Per Hour Limit*

ASH has requested an hourly rate of $110 for the work of its Director, John F. Banzhaf III, and an hourly rate of $100 for its General Counsel, Paul N. Pfeiffer. To support its claim for hourly rates above $75, ASH cites a number of cases in which attorneys of comparable prominence and experience were compensated at rates ranging from $110 to $125 per hour.[21] None of the

---

**13.** *Hensley v. Eckerhart,* —— U.S. ——, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983).

**14.** *Copeland v. Marshall,* 641 F.2d 880, 892 n. 18 (D.C.Cir.1980) (en banc) (quoting *Lamphere v. Brown Univ.,* 610 F.2d 46, 47 (1st Cir.1979)).

**15.** 48 Fed.Reg. 24,866 (1983).

**16.** *Hensley v. Eckerhart,* —— U.S. ——, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983).

**17.** *Id.*

**18.** *Copeland v. Marshall,* 641 F.2d 880, 892 n. 18 (D.C.Cir.1980) (en banc) (quoting *Lamphere v. Brown Univ.,* 610 F.2d 46, 47 (1st Cir.1979)).

**19.** *See Firebird Society v. Bd. of Fire Comm'rs.,* 556 F.2d 642, 644 (2d Cir.1977).

**20.** 28 U.S.C.A. § 2412(d)(1)(A) (West Supp. 1983) provides in relevant part:

> [A] court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, *unless the court finds that the position of the United States was substantially justified* or that special circumstances make an award unjust.

(emphasis supplied).

**21.** *See Environmental Defense Fund v. Environmental Protection Agency,* 672 F.2d 42 (D.C.Cir.1982) ($110 for lead counsel) [hereinafter cited as *EDF*]; *Sierra Club v. Gorsuch,* 684 F.2d 972 (D.C.Cir.1982), *rev'd on other grounds,* —— U.S. ——, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983) (same); *Jordan v. Department of Justice,* 691 F.2d 514 (D.C.Cir.1982) ($125 for lead counsel).

fee awards in these cases, however, came under the EAJA; all were awarded under statutes without an explicit statutory fee cap.[22] The EAJA, however, provides that:

The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that . . .

(ii) attorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justified a higher fee.[23]

In enacting this fee limitation, Congress attempted to provide full market compensation for successful litigants while, at the same time, containing costs.[24] The two special factors specifically enumerated in the statute—cost of living rises and limited availability of counsel—facilitate flexible adjustment to special economic circumstances. The cost of living language reflected congressional awareness that, with inflation, the fee limiting provision could defeat the purpose of the statute.[25] The limited availability of counsel provision is directed at another unusual situation: where specialized legal services cannot be obtained in the market for $75 or less.

■ ASH first contends that the $75 limit does not apply because the Board acted in bad faith. A finding of bad faith would allow ASH to claim fees under a section of the EAJA that has no fee-limiting provision.[26] In addition, if acting in bad faith, the Board itself rather than the Treasury would have to pay the fees.[27]

ASH asserts two bases for its claim of bad faith: 1) that the Board, in gaining six stays from this court, represented falsely that it was considering more stringent regulations "in view of the result embodied in ER–1245"[28] and 2) that the Board failed to proceed on a number of enforcement actions and complaints filed by ASH.[29] Neither contention is sufficient to warrant a finding of bad faith. The Board's representations did not bind it to promulgate more stringent rules. The shift of direction in 1981 came after a two-year period of consideration and a change in membership on the Board. We have no basis to conclude that the Board's stay requests were intentionally deceptive and in bad faith. Nor can the Board's failure to pursue other enforcement actions and complaints form the factual predicate for a finding of bad faith. These actions and complaints are not part of this litigation; the Board's conduct in

---

22. In *EDF,* fees were awarded under the fee provision of the Toxic Substances Control Act, § 19(d), 15 U.S.C. § 2618(d) (1976); in *Sierra Club* under the fee provision of the Clean Air Act, § 307(f), 42 U.S.C. § 7607(f) (Supp. V 1981); in *Jordan* under the fee provision of the Freedom of Information Act, 5 U.S.C. § 552(a)(4)(E) (1976).

23. 28 U.S.C.A. § 2412(d)(2)(A) (West Supp. 1983).

24. *See Award of Attorneys' Fees Against the Federal Government: Hearings before the Subcommittee on Courts, Civil Liberties and Administration of Justice of the House Committee on the Judiciary,* 96th Cong., 2d Sess. 32 (1980) (testimony of Sen. DeConcini); *id.* (statement of Rep. Kastenmeier).

25. *See Equal Access to Courts: Hearings Before the Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary,* 95th Cong., 2d Sess. 58–59 (1978) (testimony of Judge Rubin).

26. Under 28 U.S.C.A. § 2412(b) (West Supp. 1983), the "United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award." The Supreme Court "has recognized the 'inherent power' of the federal courts to assess attorneys' fees when the losing party has 'acted in bad faith . . . .'" *Runyon v. McCrary,* 427 U.S. 160, 183, 96 S.Ct. 2586, 2601, 49 L.Ed.2d 415 (1976) (quoting *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.,* 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974).

27. *See* 28 U.S.C.A. § 2412(c)(2) (West Supp. 1983).

28. ASH's Application for Attorneys' Fees at 5.

29. *Id.*

these other matters is irrelevant to the question of bad faith in this lawsuit.

Since we find no evidence of the Board's bad faith, we decline to levy the fees against the Board directly. In addition, ASH cannot receive fees under § 2412(b), but only under the fee-limiting provisions of § 2412(d).

ASH further argues that its fee requests fall within both of the specifically enumerated "special factors" in the statute. They contend that 1) the 41% rise in the cost of living since the commencement of the litigation in 1979, and 2) the experience of the ASH attorneys entitles them to hourly rates above the $75 maximum.[30] While we do not doubt the accuracy of ASH's cost of living figures, we do not find them relevant. This fee provision of the Act took effect on October 1, 1981. The $75 maximum presumably incorporated increases in the cost of living to that date. We must assume that Congress believed that $75 in October 1981 dollars, not January 1979 dollars, was an appropriate fee cap. Hence, ASH is only entitled to an adjustment for the rise in the cost of living since the effective date of the statute.[31] This factor will be included in the upward adjustment for special factors.

In addition, although we do not question the experience and capability of ASH's attorneys, we cannot find that "limited availability of qualified counsel" justifies a higher award. ASH does have partic-

ular expertise in the area of smoking regulation; nevertheless, a challenge of the CAB regulations as arbitrary and capricious did not necessarily require the service of attorneys with ASH's subject matter expertise.

The Equal Access to Justice Act also gives the court discretion to consider other, unenumerated special factors.[32] Courts have traditionally conducted this special factor inquiry in fee cases to insure that unusual circumstances have not rendered the lodestar formula[33] an improper measure of compensation. As this court held in *Copeland v. Marshall,* if such special factors as the contingent nature of success, delay in payment or quality of representation are present, an adjustment to the lodestar is appropriate.[34] We hold that the provisions of EAJA are in no way incompatible with the special factor inquiry required by *Copeland.* Congress clearly intended that such an inquiry be undertaken in EAJA cases. Applying the *Copeland* factors in the instant case, we find that the long delay in payment and the successful result obtained warrant an upward adjustment of the lodestar.

*Copeland* held that the lodestar "may be adjusted up or down to reflect the 'quality of representation.' "[35] An important component of the quality of representation is the result obtained. As this court stated, an upward adjustment is appropriate "when the attorney performed excep-

---

**30.** Answer of Petitioner-Applicant, Action on Smoking and Health, to Civil Aeronautics Board's Three Motions For: (1) Discovery; (2) Leave to File an Offer of Judgment; and (3) An Extension of Time in Which to File Opposition to Petitioner's Application for Attorneys' Fees; and ASH's Contingent Motion for Appointment of a Special Master at 19 [hereinafter ASH Answer].

**31.** *Cf. Natural Resources Defense Council v. EPA,* 703 F.2d 700 (3d Cir.1983).

**32.** *See* H.R.Rep. No. 1418, 96th Cong., 2d Sess. 15 *reprinted in* 1980 U.S.Code Cong. & Ad.News 4984, 4994 ("Such factors would include, *but are not limited to,* an increase in the cost of living or a limited availability of qualified attorneys with expertise in the particular proceed-

ings involved.") (emphasis supplied); *see also* H.R.Rep. No. 1005, 96th Cong., 2d Sess. 11 ("[N]o attorney may be compensated at a rate in excess of $80 per hour, unless special factors justify a higher fee."); 125 Cong.Rec. 21,444 (1979) ("Higher rates may be awarded in the case of special circumstances or increases in the cost of living.") (statement of Sen. Kennedy).

**33.** The lodestar is the product of the number of hours worked and the hourly rate. *See infra* p. 221.

**34.** *See Copeland v. Marshall,* 641 F.2d 880, 905–08 (D.C.Cir.1980) (en banc).

**35.** *Id.* at 893.

tionally well, or obtained an exceptional result for the client."[36] The Supreme Court has placed even greater emphasis on the outcome, stating that "the most critical factor is the degree of success obtained,"[37] and "[t]he result is what matters."[38]

Since this case arises under EAJA and not under the civil rights statutes as in *Copeland,* the nature of the quality adjustment is different. As this court pointed out in *Copeland:*

> A quality adjustment is appropriate only when the representation is unusually good or bad, *taking into account the level of skill normally expected* [39] *of an attorney commanding the hourly rate used to compute the "lodestar."* [40]

Under EAJA, the maximum hourly rate is fixed at $75. A court, however, is not to take into account the level of skill normally expected of a lawyer charging $75 per hour, but rather the level of skill expected of a lawyer commanding *this* lawyer's usual reasonably hourly fee.

EAJA imposes a limited constraint. The $75 per hour limit constrains litigants from hiring high-priced lawyers; this was clearly a concern of Congress.[41] But Congress also wanted to provide incentives to excellent representation. The special factor exception allows for such a system of incentives. For this system of incentives to work, however, the adjustment can only be made if lawyers exceed expected standards for lawyers of their own caliber. If adjustments could be made for work superior to that normally expected of a lawyer charging $75 per hour, then attorneys might well be rewarded for subpar rather than superior efforts.

In applying these principles to the instant case, we find that the quality of representation and exceptional result warrant some upward adjustment. ASH opposed the Board on six distinct issues and prevailed on all six. In addition, we find that the long delay in payment also supports an upward adjustment. In *Copeland,* this court stated:

> The delay in receipt of payment for services rendered is an additional factor that may be incorporated into a contingency adjustment. . . . Court-awarded fees normally are received long after the legal services are rendered. . . . [P]ayment today for services rendered long in the past deprives the eventual recipient of the value of the use of the money in the meantime, which use, particularly in an inflationary era, is valuable. A percentage adjustment to reflect the delay in receipt of payment therefore may be appropriate.[42]

A substantial portion of the work in this case was done approximately four years ago. In addition, a year of delay in this litigation is directly attributable to the Board's six requests for stays pending the Board's consideration of more stringent rules. Although the statute specifies a $75 per hour limitation, it is clear that $75 per hour received now is far more valuable than $75 in the future. Persistently high interest rates in the past few years have exacerbated the problem of delay. By specifying inflation as a "special factor," Congress indicated its concern that lawyers receiving fees at different times obtain equivalent value. In view of the long delay in this

---

**36.** *Id.* at 894.

**37.** *Hensley v. Eckerhart,* —— U.S. ——, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983).

**38.** *Id.* at 1940.

**39.** *Copeland v. Marshall,* 641 F.2d 880, 893 (D.C.Cir.1980) (en banc) (emphasis in original).

**40.** *Id.* (emphasis supplied).

**41.** *See Award of Attorneys' Fees Against the Federal Government: Hearings Before the Subcommittee on Courts, Civil Liberties and Ad-*

ministration of Justice of the House Committee on the Judiciary, 96th Cong., 2d Sess. 32 (1980) ("As far as fees and expenses, it has limitations as well, which, I gather, would prevent a party from engaging entirely an expensive law firm and being able entirely to cover all the expenses that might be charged, if they would otherwise qualify under the bill.") (statement of Rep. Kastenmeier).

**42.** 641 F.2d 880, 893 (D.C.Cir.1980) (en banc) (citation omitted).

case, inflation, the quality of representation and the successful result, we award ASH a 10% upward adjustment of the lodestar. The hourly rates of attorneys Banzhaf and Pfeiffer to be used in computing that lodestar are reduced to $75.

### D. Challenges to the Hours Claimed by Individual ASH Lawyers

The Board has challenged the hours claimed in the main application by each of the four ASH attorneys, asserting that the attorneys' time was inadequately documented and that wasted or duplicative time was not eliminated. We will first set out the relevant principles of law and then apply them in turn to the claims of the individual lawyers. Where a request has been inadequately documented, or is excessive, we will not attempt to identify and eliminate particular hours. Rather, following the Supreme Court's suggestion in *Hensley v. Eckerhart,* we will "simply reduce the award" by particular percentages to account for deficiencies in the application.[43]

### 1. Documentation

A "fee applicant bears the burden of . . . documenting the appropriate hours expended . . . and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims."[44] In *National Ass'n of Concerned Veterans v. Secretary of Defense,* this court announced that contemporaneous time records are required to support a fee application:

> Casual after-the-fact estimates of time expended on a case are insufficient to support an award of attorneys' fees. Attorneys who anticipate making a fee application must maintain contemporane-

ous, complete and standardized time records which accurately reflect the work done by each attorney.[45]

The *National Association* requirement, however, should not be applied retroactively to hours expended prior to the issuance of that opinion. In addition, the recordkeeping requirement should not be imposed in a draconian manner. As this court stated recently in *Jordan v. Department of Justice:*

> Total denial of requested fees as a purely prophylactic measure, however, is a stringent sanction, to be reserved for only the most severe of situations, and appropriately invoked only in very limited circumstances. Outright denial may be justified when the party seeking fees declines to proffer any substantiation in the form of affidavits, timesheets or the like, or when the application is grossly or intolerably exaggerated, or manifestly filed in bad faith.[46]

In most cases, therefore, deficiencies in documentation are cause for reduction rather than outright denial of fees.[47]

### 2. Hours "Reasonably Expended"

Lawyers claiming fees from the government must exercise "billing judgment."[48] "Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority."[49] Prevailing counsel must "make a good faith effort to exclude from a fee request hours that are excessive, redundant or otherwise unnecessary."[50] Hours are not reasonably expended if an attorney duplicates work done earlier by another attorney, if an attorney takes extra time due

---

43. —— U.S. ——, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). *See New York Ass'n for Retarded Children v. Carey,* 711 F.2d 1136, 1147–48 (2d Cir.1983); *Copeland v. Marshall,* 641 F.2d 880, 903 (D.C.Cir.1980) (en banc).

44. *Hensley v. Eckerhart,* —— U.S. ——, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983).

45. 675 F.2d 1319, 1327 (D.C.Cir.1982).

46. 691 F.2d 514, 518 (D.C.Cir.1982) (citations omitted).

47. *See Hensley v. Eckerhart,* —— U.S. ——, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) ("Where the documentation of hours is inadequate, the . . . court may reduce the award accordingly.").

48. *Id.* at 1940 (quoting *Copeland v. Marshall,* 641 F.2d 880, 891 (D.C.Cir.1980) (en banc)).

49. *Id.* (emphasis in original).

50. *Id.* at 1939–40.

to inexperience, or if an attorney performs tasks that are normally performed by paralegals, clerical personnel or other non-attorneys. If an application contains hours unreasonably expended, a court must make appropriate reductions.

### 3. *The Lodestar*

"The initial task in determining an appropriate fee award ... is to establish the 'lodestar': the number of hours reasonably expended multiplied by a reasonable hourly rate." [51] Applying the principles set out above, we will derive an hourly total and rate for each of the four ASH attorneys in turn.

### a. *Peter Georgiades*

Peter Georgiades was ASH General Counsel at the time this litigation began in 1979 until his departure from ASH in 1980. ASH has asked to be compensated for 304.1 hours of Mr. Georgiades' time at $55 per hour. The Board argues that ASH is not entitled to these fees because (1) the work was completed before the 1981 challenge on which ASH prevailed, (2) documentation is inadequate, and (3) the number of hours claimed is excessive. As discussed in section B above, we find the first contention without merit. We agree, however, that the application is poorly documented and includes unproductive hours.

Mr. Georgiades offers no contemporaneous time records. As ASH correctly points out, Mr. Georgiades' work was performed before the effective date of the EAJA and before this circuit made contemporaneous time records mandatory. Mr. Georgiades admits in his affidavit, however, that he did keep contemporaneous time records during his time at ASH but stated that "any of the daily time record sheets I used while gener-

al counsel at ASH ... which I retained after leaving ASH in 1980 were discarded when I moved my law offices in 1981." [52] Although the work was performed earlier, the discarding of the time records took place *after* the passage of EAJA in 1980 (but possibly before its effective date, October 1, 1981).

In place of the discarded records, Mr. Georgiades has submitted an affidavit dated February 17, 1983, which tabulates within ranges the hours spent on various phases of the litigation. The affidavit is based upon his recollections made 2½ to 4 years after the work was performed. Mr. Georgiades estimates that he spent between 258 and 295 hours on a variety of specific projects. He fails to specify the actual dates on which any of this work was performed. He also claims that consultation with CAB counsel, communication with the Aviation Consumer Action Project and unspecified "incidental duties" consumed an additional ten percent of the time expended. [53] The 304.1 hours claimed is the sum of the average of the range of hours tabulated and the additional ten percent for incidental duties.

We find Mr. Georgiades' documentation sorely deficient. Although not required to keep contemporaneous records at the time he performed the work, he did keep such records but discarded them after he should have known of their utility. The summary of hours in Mr. Georgiades' affidavit can only be characterized as a "[c]asual after-the-fact estimate." [54] The claim for ten percent of additional time is so vague as to be incomprehensible.

Mr. Georgiades has also claimed hours expended on particular tasks that seem patently excessive. [55] ASH concedes that, as a

---

51. *National Ass'n of Concerned Veterans v. Secretary of Defense,* 675 F.2d 1319, 1323 (D.C. Cir.1982) (citation omitted).

52. Affidavit of Attorney Peter N. Georgiades at 2.

53. *Id.* at 4.

54. *National Ass'n of Concerned Veterans v. Secretary of Defense,* 675 F.2d 1319, 1327 (D.C. Cir.1982).

55. Mr. Georgiades, for example, claims 6 hours for preparation of an unopposed motion to enlarge time for filing brief. In addition, he estimates 11–14 hours spent preparing two petitions for review and 7 hours on two negotiations regarding the filing of the record. The

consequence of Georgiades' inexperience at the time,[56] "he would naturally have taken longer to prepare a case than would a more experienced lawyer."[57] ASH explained that it "had already made allowance for this by charging its lowest rate per hour."[58] But the hourly rate charged, $55 in 1979 dollars, is not so low as to relieve ASH of its obligation to eliminate unproductive time.

■ In view of ASH's failure to document and to exercise billing judgment in computing Mr. Georgiades' time, we make the following adjustment to ASH's request. We take the minimum figure of 258 hours in Mr. Georgiades' estimated range as the base figure. We exclude completely the additional ten percent claimed. We then reduce the base figure by one third to account for the deficiencies discussed above and multiply the remainder, 172 hours, by the $55 hourly rate. ASH is therefore entitled to $9460 for Mr. Georgiades' work.

b. *Paul N. Pfeiffer*

Mr. Pfeiffer, General Counsel of ASH since July, 1980, has requested fees for 214.5 hours at $100 per hour. Under EAJA, as noted above, $75 per hour is the statutory maximum. Mr. Pfeiffer's hourly rate must accordingly be reduced to that amount.

■ Mr. Pfeiffer's hours are appropriately documented with contemporaneous time records. The application, however, contains requests for hours spent on an issue on which it did not prevail, for duplicative hours, for hours unnecessarily expended, and for hours spent performing non-legal tasks. Mr. Pfeiffer spent 79

hours researching and preparing a draft of ASH's main brief that was largely discarded by attorneys Banzhaf and Mueller when Mr. Pfeiffer was later hospitalized.[59] Over one hundred hours were subsequently expended by other attorneys for their research and preparation of the same brief. While we realize that "preparation of an appellate brief involves many drafts, some of which are partially discarded,"[60] we cannot fully compensate what appears to have been two parallel, full-time work efforts that yielded a single brief.

Second, over ten percent of the hours claimed by Mr. Pfeiffer were devoted to "Preparation of a Stipulation as to Record." Under the Federal Rules of Appellate Procedure, however, the Board had the sole right and obligation to prepare and file the record.[61] While the parties can stipulate the filing of less than the entire record, the benefits of an abridged record surely cannot have been worth the sum ASH seeks for that work. In addition, Mr. Pfeiffer requested 9 hours for preparing the petition for review, a *pro forma* and purely procedural document.[62]

Mr. Pfeiffer also seeks compensation for preparation of the joint appendix and for numerous trips to the courthouse to file documents—tasks which do not require the services of an attorney. We understand that ASH, a public interest, non-profit organization, performs its work without the abundant clerical or paralegal support often possessed by private sector law firms; nevertheless, we cannot compensate work not properly performed by attorneys at attorneys' rates.

In view of the foregoing deficiencies in Mr. Pfeiffer's application, we deem it ap-

former activity, the simple drafting of purely procedural documents, should have taken far less time, while the latter activity was solely the Board's responsibility. *See* FED.R.APP.P. 17(a).

56. Mr. Georgiades was hired by ASH upon his graduation from law school. At the time that this suit began, he had approximately 1 year and 3 months of legal experience. Affidavit of Attorney Peter N. Georgiades at 1.

57. ASH Answer at 12.

58. *Id.*

59. *See* ASH Answer at 14.

60. Reply of Petitioner to Opposition to Application for Attorneys' Fees at 15.

61. FED.R.APP.P. 17(a).

62. *See* FED.R.APP.P. 15(a), Form 3.

propriate to reduce his claim of hours reasonably expended by 25%. At the hourly rate of $75, ASH is entitled to $12,065.63 for Mr. Pfeiffer's services.

### c. *Athena Mueller*

ASH Staff Counsel Athena Mueller has presented an amply documented request for 181.5 hours at $75 per hour. Ms. Mueller's application, however, is similarly plagued by requests for hours that were duplicative, unproductive, or devoted to work normally performed by non-attorneys. Ms. Mueller assumed the task of preparing the main brief after Mr. Pfeiffer's hospitalization. Although Mr. Pfeiffer had devoted 22 hours to research and 57 hours to preparing a draft, Ms. Mueller spent a further 63 hours on research and 104.5 hours preparing a second draft of the brief. ASH notes that Ms. Mueller was forced "at short notice, to acquant herself with the whole four-year-long history of the case." [63] In addition, since Ms. Mueller lacked relevant expertise, "[i]n order to revise the brief, she ... had to master an area of law that was new to her." [64]

While we are mindful of the special difficulties for ASH occasioned by Mr. Pfeiffer's medical problems, we cannot award compensation for duplicative work because of those difficulties. In the private sector, the lawyer, not the client, bears such risk. A lawyer exercising "billing judgment" would not bill a client for a second lawyer's learning time, particularly when that period is lengthened by the lawyer's inexperience and is billed at senior lawyers' rates. In addition, while we are aware that briefs proceed through multiple drafts, we reiterate our conclusion that the work of attorneys Mueller and Pfeiffer on the main brief appears to have been substantially duplicative. Finally, we conclude that Ms.

Mueller's claim for certain work that was essentially clerical cannot be compensated at attorneys' rates and calls for a reduction. [65]

We find that the duplicative nature of Ms. Mueller's work on the main brief, coupled with her inexperience in this area of law and her claim for work not normally performed by an attorney, justify a one-third reduction in the number of hours reasonably expended. At the hourly rate of $75, ASH is entitled to $9075 for her services.

### d. *John F. Banzhaf III*

ASH Director John F. Banzhaf III seeks compensation for 72 hours of work. As noted above, the statutory limitation in EAJA mandates a reduction of his hourly rate from $110 to $75. Mr. Banzhaf's time is almost completely undocumented. Although a substantial portion of this work was done before EAJA and before the major attorneys' fees decisions of this court, a substantial portion was performed long after Mr. Banzhaf should have known what documentation was required. Since most of Mr. Banzhaf's work was supervisory, most of his time can be reconstructed from the time records of other attorneys. Nevertheless, some reduction is appropriate for this deficiency. In addition, a reduction is necessary for hours spent supervising other attorneys' work that we have found to have been unnecessary or unduly time-consuming. [66] In view of these flaws in the application, we order a 10% reduction in the number of hours requested. Accordingly, ASH is to receive $4,860.00 for Mr. Banzhaf's work.

### e. *Expenses*

ASH also seeks $96.38 for "out-of-pocket" expenses. Of this amount, $28 is

---

**63.** ASH Answer at 14.

**64.** *Id.*

**65.** Four hours were spent "Supervising Preparation and Dispatch of Copies, and Filing Brief." Affidavit of Athena Mueller, Staff Counsel, Action on Smoking and Health, Exhibit A at 2.

**66.** Mr. Banzhaf requests compensation for 10.5 hours spent supervising preparation of stipulations as to records, petitions for review, and a motion to enlarge time for filing a brief. As noted above, these tasks should have required very little time and even less supervision.

requested for taxi fares to the courthouse and $68.38 for photocopying, filing, wrapping and postage. Under EAJA, taxi fares, filing, wrapping and postage are not compensable; only photocopying costs may be claimed.[67] Since ASH does not itemize the $68.38, we will estimate the photocopying portion of that expenditure at $40 and award that sum for expenses.

### E. *Lodestar Adjustment*

From the foregoing calculations, we derive the following lodestar table:

| | Hours | Rate | Lodestar |
|------------|---------|-------|-------------|
| Georgiades | 172 | $55 | $ 9,460.00 |
| Pfeiffer | 160.875 | $75 | 12,065.63 |
| Mueller | 121 | $75 | 9,075.00 |
| Banzhaf | 64.8 | $75 | 4,860.00 |
| TOTAL: | | | $35,460.63 |

Factoring in the ten percent lodestar adjustment, ASH is entitled to recover $39,006.69 in fees on its main application plus $40.00 in expenses, a total of $39,046.69.

### II. Supplemental Application

ASH's supplemental application requests compensation for its efforts to collect attorneys' fees and for its successful challenge of ER–1245A. ASH seeks payment for 102.25 hours of work on the fees issue and for 81.25 hours on its challenge of ER–1245A. For the reasons set out below, we conclude that only fifty percent of the hours spent on the fees issue can be compensated and that the fee request for work relating to ER–1245A must be denied completely.

### A. *Attorneys' Fees*

 The Supreme Court has admonished that "[a] request for attorney's fees should not result in a second major litigation."[68] Unfortunately, the Court's precept has not been heeded in this case; the parties have engaged in a protracted dispute over fees. ASH's failure in its main application to document and to deduct hours not reasonably expended formed the basis for much of this controversy. Had ASH submitted a more sound application initially, a substantial portion of its work on this application would have been unnecessary. Hence, although a successful litigant is ordinarily entitled to fees for its litigation of a fee application,[69] ASH cannot receive compensation for work that could have been avoided.[70] Accordingly, we allow as reasonably expended only one half of the requested hours. At the statutory maximum rate of $75, ASH is entitled to $3,834.38 for its efforts to collect fees.

### B. *ER–1245A*

ER–1245 rescinded, *inter alia*, three protections previously afforded non-smokers: a requirement that cigar and pipe smokers be segregated, a ban on smoking when ventilation systems are not fully functioning, and a regulation that non-smokers not be "unreasonably burdened" by drifting smoke. In January, this court vacated ER–1245 as lacking an adequate statement of basis and purpose. In April, however, the Board indicated that it was considering rescission of all three rules once again, this time adding the requisite statement of basis and purpose. ASH filed a motion for emergency relief, but after negotiation with the Board, withdrew that motion. Ultimately, on June 3, 1983, the Board promulgated ER–1245A, which rescinded only the "unreasonably burdened" portion of the earlier rule ER–1091.[71] On June 17, ASH filed a motion for emergency relief. On June 30, 1983, this court granted ASH's motion, vacating that portion of ER–1245A which revoked the "unreasonably burdened" language of ER–1091. The court also ordered the Board to republish this portion of ER–1091.

---

**67.** *See NAACP v. Donovan,* 554 F.Supp. 715, 719 (D.D.C.1982).

**68.** *Hensley v. Eckerhart,* —— U.S. ——, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983).

**69.** *See Environmental Defense Fund v. Environmental Protection Agency,* 672 F.2d 42, 62 (D.C.Cir.1982).

**70.** *See New York State Ass'n for Retarded Children v. Carey,* 711 F.2d 1136, 1148 (2d Cir.1983).

**71.** *See* 48 Fed.Rep. 24,866 (1983).

ASH seeks compensation for its efforts in vacating ER–1245A. In the normal course ASH would be entitled to fees for this work; 28 U.S.C. § 2412(d)(1)(B) defines the terms of that entitlement:

A party seeking an award of fees and other expenses *shall, within thirty days of final judgment in the action, submit to the court an application for fees* and other expenses which show that the party is a prevailing party and is eligible to receive an award under this subsection, and the amounts sought. . . .

(emphasis supplied).

Final judgment vacating ER–1245A was entered on June 30, 1983. Under the statute, ASH had until August 1, 1983 to file its request.[72] In its reply to the Board's opposition, filed July 22, 1983, ASH acknowledged its awareness of the filing deadline. ASH asserted that "[i]n accordance with the Clerk of the Court, ASH will submit a supplementary application for fees ... within the next ten days"—by August 1, 1983.[73] ASH failed to meet this deadline; its supplemental application for fees was filed on August 11, 1983, forty-two days after the entry of judgment.

■ The thirty day time limitation contained in EAJA is not simply a statute of limitations. It is a jurisdictional prerequisite to governmental liability. ASH's failure to file in timely fashion deprives this court of subject matter jurisdiction to award fees.

■ The Equal Access to Justice Act significantly abridged the government's immunity from suits for attorneys' fees.[74] As a waiver of sovereign immunity, the Act must be strictly construed. Once the government agrees to allow such suits, "the terms of its consent to be sued in any court define that court's jurisdiction to entertain that suit."[75] Courts have consistently held that a statutory time limitation is an integral condition of the sovereign's consent.[76] Compliance with that condition is a prerequisite to jurisdiction.[77]

The statutory language and legislative history of the Act, although not couched in the language of jurisdiction, indicate that Congress intended the filing deadlines to be enforced strictly. The statute uses the mandatory "shall." The House Conference Report accompanying the Act stated that the bill "*requires* a party seeking an award of fees and other expenses to submit the application for them within thirty days of final judgment."[78] The House Report noted that under the bill, "a party seeking an award of fees *must* apply to the court within 30 days of final judgment."[79]

■ Although we find that the request is barred on jurisdictional grounds, we note that we would have been compelled to the same conclusion even if the thirty day filing period was simply a statute of limitations. Were this the case, the time requirement

---

**72.** The thirtieth day after judgment, July 30, 1983, fell on a Saturday. Fed.R.App.P. 26(a) extends the time for filing in such situations to the following Monday—in this case August 1, 1983.

**73.** Reply of Petitioner, Action on Smoking and Health to Civil Aeronautics Board's Opposition to Application for Attorneys' Fees at 22.

**74.** *See* H.R.Rep. No. 1418, 96th Cong., 2d Sess. 1, 8–9 (1980), *reprinted in* 1980 U.S.Code Cong. & Ad.News 4953, 4986–87.

**75.** *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941).

**76.** *See Soriano v. United States,* 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957); *Monark Boat Co. v. NLRB,* 708 F.2d 1322, 1327

(8th Cir.1983); *Knapp v. United States,* 636 F.2d 279, 282 (10th Cir.1980); *Kreiger v. United States,* 539 F.2d 317, 320–22 (3d Cir.1976); *Childers v. United States,* 442 F.2d 1299, 1303 (5th Cir.1971), *cert. denied,* 404 U.S. 857, 92 S.Ct. 104, 30 L.Ed.2d 99 (1971); *Mann v. United States,* 399 F.2d 672, 673 (9th Cir.1968); *Simon v. United States,* 244 F.2d 703, 704–705 (5th Cir.1957).

**77.** *Monark Boat Co. v. NLRB,* 708 F.2d 1322, 1327 (8th Cir.1983).

**78.** H.R.Rep. No. 1434, 96th Cong., 2d Sess. 26 (1980), *reprinted in* 1980 U.S.Code Cong. & Ad.News 5003, 5015 (emphasis supplied).

**79.** H.R.Rep. No. 1418, 96th Cong., 2d Sess. 18 (1980), *reprinted in* 1980 U.S.Code Cong. & Ad.News 4984, 4997 (emphasis supplied).

would have been subject to the ameliorating doctrines of waiver, estoppel and equitable tolling.[80] ASH, however, has offered no reasons why any of these equitable defenses would apply. Indeed, ASH, after promising timely filing in its July 22 reply, did not attempt to excuse its failure to file within the required period. Hence, ASH's neglect would have been fatal to its application even if sovereign immunity had not foreclosed jurisdiction.

We decline to make an upward adjustment of the lodestar on the supplemental application. The fees will be paid very shortly after the performance of the work; the problem in the main application of a long delay between performance of services and payment is absent here. In addition, given ASH's own responsibility for much of the fees dispute, we find that the sum awarded is fully compensatory of ASH's efforts.

## CONCLUSION

In all, ASH is entitled to $42,881.07 from the government for its work in this litigation. ASH has ably represented the public interest. ASH's failure to document, to exercise billing judgment and to file in a timely manner, however, has warranted the substantial deductions taken from its main and supplemental fee applications.

*So ordered.*

---

80. *See Zipes v. Trans World Airlines,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982). *Zipes* held that the Title VII requirement of timely filing with the EEOC was not jurisdictional, but akin to a statute of limitations. *Zipes,* however, involved an action against a private party. No question of sovereign immunity was therefore presented. *See Monark Boat Co. v. NLRB,* 708 F.2d 1322, 1327 (8th Cir.1983).