**Norma HOLDEN, et al., Plaintiffs,**

and

**State of Ohio, Through Richard F. Celeste, Governor, Plaintiff-Intervenor,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.**

**Civ. A. No. C84–548.**

United States District Court, N.D. Ohio, E.D.

Aug. 27, 1985.

David B. Dawson, Louise McKinney, Carolyn L. Carter, Legal Aid Soc. of Cleveland, Mark J. Valponi, Kelley, McCann & Livingstone, Fred P. Schwartz, Hahn, Loeser, Freedheim, Dean & Wellman, Cleveland, Ohio, for plaintiffs.

Kathleen Ann Sutula, Steven D. Bell, Michael Anne Johnson, Asst. U.S. Attys., Cleveland, Ohio, for defendant.

### MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

The prevailing plaintiffs in this social security disability class action seek attorneys' fees, costs and expenses from the Secretary of Health and Human Services ("Secretary") under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. Under the statute, fees must be awarded unless "the position of the United States"

—the Secretary's substantive position and the government's litigating position—was "substantially justified." Review of the recently-amended statute, the relevant Sixth Circuit case law and the lengthy history of this action compels the conclusion that the Secretary's positions were unjustified and that an award under the EAJA is appropriate.[1]

## I.

The EAJA was enacted in 1980. Following enactment of the Equal Access to Justice Act Amendments ("EAJA Amendments),[2] 28 U.S.C. § 2412(d)(1)(A) now provides:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort, including proceedings for judicial review of agency action) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

The newly-enacted 28 U.S.C. § 2412(d)(2)(D) provides:

> ... "position of the United States" means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based; except that fees and expenses may not be awarded to a party for any portion of the

litigation in which the party has unreasonably protracted the proceedings.

And another new provision, § 206(b) of the EAJA, provides in part:

> Section 206(b) of the Social Security Act (42 U.S.C. 406(b)(1)) shall not prevent an award of fees and other expenses under section 2412(d) of title 28, United States Code....

While § 206(b) is consistent with the Sixth Circuit's view that EAJA fees were available in social security cases, *Feldpausch v. Heckler*, 763 F.2d 229 (6th Cir. 1985); *Couch v. Secretary of Health and Human Services*, 749 F.2d 359 (6th Cir. 1984) (per curiam), in several important areas the recent amendments and their accompanying legislative history modify the court of appeals' prior approach. Most significantly, 28 U.S.C. § 2412(d)(2)(D) explicitly overrules the position enunciated in *Trident Marine v. District Engineer, The United States Army Corps of Engineers, Detroit District*, 766 F.2d 974 (6th Cir. 1985). There the court held that the "position of the United States" referred only to the government's litigating position, not to the underlying agency position or to a hybrid of the agency position and litigating position. *Id.* at 977–980. The legislative history accompanying § 2412(d)(2)(D) states that this view is inconsistent with Congressional intent in enacting the EAJA:

> ... The term "position of the United States ..." was not explicitly defined under the prior law, causing courts much confusion as to the proper scope of an EAJA proceeding. The Committee here defines the "position" term in a way to clarify the EAJA, consistent with the

---

**1.** This opinion deals only with the threshold question of whether any fees should be awarded. The Secretary also challenges the amount of fees—$212,791.28—sought by plaintiffs' counsel, the Legal Aid Society of Cleveland and the law firm of Kelley, McCann & Livingstone. By agreement of the parties, adjudication of the amount of fees to be awarded has been deferred pending issuance of this ruling and subsequent discovery and pleading.

**2.** Pub.L. 96–481, Title II, § 204(c), 94 Stat. 2327 provided that portions of the EAJA expired ef-

fective October 1, 1984, although fees remained available for all cases commenced prior to that date. The Equal Access to Justice Act Amendments, Pub.L. 99–80, amending the EAJA provisions codified at 5 U.S.C. § 504 and 28 U.S.C. § 2412, were signed by the President on August 5, 1985. They make permanent those provisions of the statute which were originally enacted as a three-year experiment, and apply to all cases pending on the date of their enactment and all cases filed on or after October 1, 1984.

original Congressional intent and the underlying purposes of the statute....

In clarifying the "position" term, the Committee expressly rejects the holding ... that the only government "position" to be scrutinized in the context of an EAJA case is that taken in the litigation itself.

This restrictive view, adopted by several ... courts of appeal has resulted in the denial of a number of meritorious fee claims, because it fails to focus attention on the unjustified government activity that formed the basis of the litigation.

If the government's litigation position was the sole consideration, the government could insulate itself from fee liability simply by conceding error or settling, because such actions will always be deemed "reasonable" litigation positions; thereby having the effect of substantially justifying their position.... Interpreting the EAJA so as to restrict its application to mere litigation arguments and not the underlying action which made the suit necessary, would remove the very incentive for careful agency action that Congress hoped to create in 1980....

The Committee's clarification of the "position" term is intended to broaden the court's ... focus of inquiry for EAJA purposes beyond mere litigation arguments, and to require an assessment of those government actions that formed the basis of the litigation. We believe this conclusion is implicit in the EAJA definition of the term "United States", which "includes any agency and any official of the United States acting in his or her official capacity" (28 U.S.C. § 2412(d)(2)(C)), rather than merely the position taken by the government's lawyers. The Committee here makes the broader view of government agency conduct explicit.

In cases where the private party is a prevailing plaintiff, the definition of "position of the United States ..." will likely include an assessment of the agency action or failure to act that forms the basis of the party's cause of action. The "action or failure to act by the agency upon which the court action ... is based" does not include mere preliminary or procedural decisions of the agency which would not be subject to judicial review. Thus, in evaluating a prevailing plaintiff's EAJA petition, the court ... will consider the agency action or failure to act that gave rise to the party's right to bring the action in a federal court ... The question that exactly constitutes such action will be determined by the court ... record of the case.

H.R.Rep. No. 99–120, 99th Cong., 1st Sess. 12–13 U.S.Code Cong. & Admin.News 1985, pp. 132, 140–141. ("House Report") (citations and footnote omitted).

Similarly, the Amendments alter the definition of "substantially justified" previously utilized by the Sixth Circuit, namely that "[t]he governing principle of the [EAJA] is that the 'United States' should pay those expenses which are incurred when the government presses *unreasonable positions* during litigation." *Westerman, Inc. v. NLRB,* 749 F.2d 14, 16 (6th Cir.1984) (citation omitted) (emphasis added). *See also Kreimes v. Dept. of Treasury,* 764 F.2d 1186 (6th Cir.1985) ("The purpose of the [EAJA] is to award litigants 'expenses of seeking review of or defending against unreasonable government action.' "); *Sigmon Fuel Co. v. Tennessee Valley Authority,* 754 F.2d 162, 166 (6th Cir.1985) ("Whether or not the government's position is substantially justified is judged by the reasonableness of the government's position."); *Wyandotte Savings Bank v. NLRB,* 682 F.2d 119, 120 (6th Cir.1982) (per curiam). The Report states:

Another problem which has developed in the implementation of the Act has been the fact that courts have been divided on the meaning of "substantial justification." Several courts have held correctly that "substantial justification" means more than merely reasonable. *Because in 1980 Congress rejected a standard of "reasonably justified" in favor of "substantially justified," the*

*test must be more than mere reasonableness.*

Especially puzzling, however, have been statements by some courts that an administrative decision may be substantially justified under the Act even if it must be reversed because it was arbitrary and capricious or was not supported by substantial evidence. Agency action found to be arbitrary and capricious or unsupported by substantial evidence is virtually certain not to have been substantially justified under the Act. Only the most extraordinary special circumstances could permit such an action to be found to be substantially justified under the Act.

The Committee expects that the determination of what is "substantially justified" will be decided on a case-by-case basis due to the wide variety of factual contexts and legal issues which make up government disputes.

*Id.* at 9–10, U.S.Code Cong. & Admin.News 1985, p. 138 (footnotes omitted) (emphasis added).

With these standards in mind, this Court turns to the history of this case and the merits of the pending application. Familiarity with this Court's numerous previous opinions is presumed. A review of the factual and legal conclusions set forth there demonstrates that neither the Secretary's actions nor the government litigating position were, in fact, substantially justified.

## II.

### A.

This class action concerned the policies and procedures by which the Secretary and state officials terminated disability benefits previously awarded under Title II and Title XVI of the Social Security Act ("the Act"), the Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") programs. The relevant termination provision, 42 U.S.C. § 423(a)(1)(D), provided that benefits would stop after a claimant's "disability ceases."

Reviewing the legislative history, this Court found that one important Congressional committee "consistently has read the phrase 'disability ceases' to require that the claimant's medical condition actually have improved before his benefits may be terminated"—the "medical improvement standard" or "presumption of continuing disability." *Holden v. Heckler,* 584 F.Supp. 463, 469 (N.D.Ohio 1984). It further found that:

Secretaries of Health, Education and Welfare concurred with Congress' reading of the statutes and applied a medical improvement standard to disability terminations from 1954 until 1976. So did various courts which interpreted the Act during those years. *See Hall v. Celebrezze,* 314 F.2d 686, 688 (6th Cir.1963) ("Once a condition has been shown to exist, there is a presumption, in the absence of proof to the contrary, that it has continued.")

*Id.* at 470.

The opinion then explained that the Secretary abandoned the medical improvement standard in 1976 and instituted a "standard of current disability," which was codified in regulations promulgated in 1980 and incorporated in numerous internal publications of the Social Security Administration ("SSA"). *Id.* at 470–71. Under this policy, more than 23,000 Ohio residents were terminated from the disability rolls. *Id.* at 471–72.

Next, a review of recent case law demonstrated that

... Using different language, ten circuit courts of appeals have held that the Secretary may not terminate disability benefits without offering substantial evidence that the record supporting the initial determination of disability is no longer valid.

The standard imposed by the courts has been called either a "medical improvement standard" or a "presumption of continuing disability."

\*    \*    \*    \*    \*    \*

Clearly the "medical improvement" and "presumption of continuing disability" standards are substantively identical.... "Under either standard benefits may not be terminated without showing that the recipient's medical condition has improved." By whatever name, this is the law in ten circuits.

*Id.* at 473–74 (citation and footnote omitted). The opinion continued:

The Sixth Circuit is one of those circuits. *Hall v. Celebrezze* is one of the earliest cases adopting a "presumption of continuing disability" standard. And *Hayes v. Secretary of Health, Education and Welfare,* 656 F.2d 204 (6th Cir.1981)—an opinion written after the Secretary issued the 1980 regulations—imposed a "medical improvement" standard for the circuit. Reversing administrative and lower court rulings that had terminated the SSI benefits of a 23-year-old mentally retarded woman, the court wrote:

... We find that the evidence does not support the conclusion that the termination of Hayes' benefits was proper because her condition had improved.

\* \* \* \* \* \*

... If at some time in the future the training is found to have been successful and Hayes' condition has improved, the Secretary may of course reevaluate the award in light of the changed circumstances.

*Id.* at 206.

As the Sixth Circuit's only published case ·dealing with the medical improvement standard, *Hayes* is the governing law for this Court.[9] Moreover, the position stated there was vigorously reaffirmed in two subsequent Sixth Circuit opinions. *Burnett v. Secretary of Health and Human Services,* 703 F.2d 559 (6th Cir.1982), reversed the Secretary's decision to terminate Burnett's

benefits because no showing had been made to satisfy the [relevant] test ...:

... In termination cases, the Secretary bears the burden of proving either: (1) that the claimant's condition has improved since the initial award of benefits; or (2) that the claimant's condition is not as serious as first supposed. *See* 20 C.F.R. 404.1539(a)(1); *Miranda v. Secretary [of Health, Education and Welfare,* 514 F.2d 996 (1st Cir. 1975) ], ...; *Weber v. Harris* [640 F.2d 176 (8th Cir.1981) ]....

In the present matter the Secretary failed to introduce evidence which supports either proposition. There is nothing whatsoever in the record to indicate that Mr. Burnett's health has improved since 1976 ...

A second case, *Hall v. Secretary of Health and Human Services,* 711 F.2d 1056 (6th Cir.1983), utilized the presumption of continuing disability standard.... [I]t held that an initial grant of benefits

... places the burden of producing evidence to rebut the presumption on the Secretary.... That is, the Secretary must produce evidence of improvement in the claimant's condition.

The law of the Sixth Circuit is clear: no recipient of SSDI or SSI disability benefits may be denied those payments unless the Secretary produces substantial evidence demonstrating that the recipient is no longer disabled within the meaning of the law.

Notwithstanding these rulings, the Secretary has not applied *Hayes* to any other disability terminations; rather, she has continued to instruct [state officials and administrative law judges] to follow SSA's regulations and internal procedures, mandating a current disability standard ...

*Id.* at 474 (citations and other footnote omitted).

---

9. *Hayes* has been cited by other courts as the Sixth Circuit's rule of law adopting the medical improvement standard. *See Kuzmin v. Schweiker,* 714 F.2d at [1233] 1238 [ (3rd Cir.

1983) ]; *Trujillo v. Heckler,* 569 F.Supp. [631] at 634 [ (D.Colo.1983) ]; *Siedlecki v. Schweiker,* 563 F.Supp. 43, 47 (W.D.Wash.1983).

B.

The next portion of the opinion dealt with the factual histories of the named plaintiffs in *Holden* and its companion case, *Brest v. Heckler*, No. C83–4893 (N.D.Ohio filed Dec. 14, 1983), and need not be repeated here. The Court then addressed jurisdictional issues presented by the Act's judicial review provision, 42 U.S.C. § 405(g). It was noted that:

The literal language of the section specifies three requirements for judicial review: (1) the final decision of the Secretary after a hearing; (2) commencement of a civil action within sixty days after the mailing of the notice of the decision, or within such times as otherwise provided; and (3) filing of the action in an appropriate district court.

While the requirement of a final decision by the Secretary is "central to the requisite grant of subject-matter jurisdiction", *Weinberger v. Salfi*, 422 U.S. 749, 764 [95 S.Ct. 2457, 2466, 45 L.Ed.2d 522] (1975),

... this condition consists of two elements, only one of which is purely "jurisdictional" in the sense that it cannot be "waived" by the Secretary in a particular case. The waivable element is the requirement that the administrative remedies prescribed by the Secretary be exhausted. The nonwaivable element is the requirement that a claim for benefits shall have been presented to the Secretary.

*Mathews v. Eldridge*, 424 U.S. 319, 328 [96 S.Ct. 893, 899, 47 L.Ed.2d 18] (1976). 584 F.Supp. at 480.

Class members satisfied all applicable requirements. With respect to presentment, it was noted that all members of the proposed class "have presented or will present a claim to the defendants that their disabilities have continued ..." *Id.* at 481. With respect to exhaustion, it was found that this action fit into all three situations in which courts may waive the exhaustion requirement—that the claims presented were collateral to the direct claim for the payment of benefits, that requiring exhaus-

tion would cause substantial hardship and irreparable harm, and that exhaustion of administrative procedures would be futile. *Id.* at 482–83. The sixty-day requirement was waived for the same reasons. *Id.* at 483.

C.

Following resolution of the jurisdictional issues, a class action was certified pursuant to Fed.R.Civ.P. 23(b)(2), and the Court turned to plaintiffs' request for a preliminary injunction. Applying the Sixth Circuit's four-part test governing issuance of such equitable relief, the Court first found that plaintiffs possessed a strong or substantial likelihood of success on the merits. Those remarks merit repeating:

Social Security cases in the Sixth Circuit have proceeded according to two separate and irreconcilable standards of law. Since July 24, 1981, the court of appeals, in the *Hayes, Hall* and *Burnett* cases, has articulated and applied a medical improvement standard. That court and district courts have repeatedly ordered the Secretary to restore benefits when the record contains no evidence that the claimant's condition has improved. Within the SSA and [state] administrative system, however, the Secretary has ignored the law of this circuit and continued to terminate individuals without demonstrating any medical improvement. Absent some compelling argument that a federal agency can legitimately ignore federal appeals court precedent, it is clear that the plaintiffs will prevail on the merits of this case.

The Secretary's response is to state that the Sixth Circuit decisions in *Hayes, Hall,* and *Burnett* were only binding on the litigants in those cases.

... [T]here is no indication that the Secretary, having lost any of the cited cases, has refused to abide by the decision in respect to the individual parties therein. Plaintiffs claim only that the Secretary is not paying benefits to *other* persons who assert that their cases are similar to these individuals. But since those are different claims assert-

ed by different parties, *res judicata* does not compel the Secretary to follow the results obtained in those cases. Post Hearing Brief at 27.

Her argument is utterly meritless. In *Kitchen Fresh, Inc. v. NLRB*, 716 F.2d 351, 357 (6th Cir.1983), the Sixth Circuit sternly rebuked the National Labor Relations Board for refusing to follow the prior case law of the circuit. The court of appeals had consistently required the NLRB to consider the entire administrative record compiled by the Regional Director; the Board stated that it "disagree[s] with the Sixth Circuit's holding and respectfully decline[s] to follow it." *Southwest Color Printing Corp.*, 247 NLRB 917 (1980). Judge Celebrezze— who formerly headed ... the Department of Health, Education and Welfare, and in that capacity supervised the SSA—responded for the court in *Kitchen Fresh:*

> The Board's refusal to apply the [Sixth Circuit] rule in cases arising in Michigan, Ohio, Kentucky and Tennessee is particularly disturbing. Although the Board is charged with the responsibility of formulating national labor policy, the courts bear the final responsibility for interpreting the labor laws ... *[s]ee Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 [2 L.Ed. 60] ... (1803); the Board is bound to apply the law of the circuit in which a case arises ... "We do not expect the Board or any other litigant to rejoice in all the opinions of this Court.... However, the Board cannot, as it did here, choose to ignore the decision of this court as if it had no force or effect. Absent reversal, the decision is the law which the Board must follows."

716 F.2d at 357 n. 12 (citations omitted). *See also Beverly Enterprises v. NLRB*, 727 F.2d 591, 593 (6th Cir.1984) (per curiam) ("The basic doctrine that, until reversed, the dictates of a Court of Appeals must be adhered to by those subject to the appellate court's jurisdiction applies equally to the precedential rule of

*stare decisis* and the policy rule respecting the law of the case.").

The same rule applies to the Secretary, the SSA, and its affiliated state agencies. *Lopez v. Heckler*, 713 F.2d 1432, 1438 (9th Cir.1983) ... (denying Secretary's motion to stay injunction pending appeal); *Hyatt v. Heckler*, 579 F.Supp. [985,] 1001 [ (W.D.N.C.1984) ] ("A cabinet member is not above the law of the land, but is obligated to follow it. The Secretary is free to argue her position in any case she chooses, but, absent express authority from Congress or the federal courts, she can not offer an appeal in a newly-filed and unrelated case as an excuse to evade the law in this case.").

The Secretary also contends that her "non-acquiescence" policy is within the scope of *United States v. Mendoza*, 464 U.S. 154, 104 S.Ct. 568 [78 L.Ed.2d 379] (1984). There the Supreme Court held that the doctrine of nonmutual collateral estoppel did not prevent the federal government from relitigating a constitutional issue adjudicated against it in a different lawsuit brought by a different party. No court in this circuit has barred the Secretary from relitigating the legal conclusion reached in *Hayes* and its progeny. But until she prevails in such a case, she must follow the established law. "The pertinent holding of *Mendoza* was only that the government must be allowed to challenge a law in court on its merits, *not* that an officer of the government may disobey court decisions with which he or she disagrees." *Hyatt v. Heckler*, 579 F.Supp. at 1002.

In sum, there is a strong probability that the plaintiffs will ultimately prevail on their statutory claim....

584 F.Supp. at 490–91.

Based on the factual record, the Court then found that denial of the injunction would cause plaintiffs irreparable harm while issuance of relief would not cause equal hardship for the Secretary. Finally, the question of whether the "public interest" would be served by the injunction was discussed:

... [T]he public interest requires that this Court condemn the Secretary's contempt for the rule of law. In essence, her position has been that she can apply whimsically whatever standard she wishes in reviewing an individual's continued eligibility for disability benefits, no matter what the federal courts may say about the requirements of the Act, and no matter how tragic, or tragi-comic, the results. The Secretary's stance is simply an affront to our constitutional system. To repeat Justice Brandeis' famous words:

> Decency, security, and liberty alike demand that government officials shall be subjected to the same rules of conduct that are commands to the citizen. In a government of laws, existence of the government will be imperiled if it fails to obey the law scrupulously. Our government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example.... If the government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy....

*Olmstead v. United States,* 277 U.S. 438, 485 [48 S.Ct. 564, 575, 72 L.Ed. 944] (1928) (Brandeis, J., dissenting).

*Id.* at 493 (footnote omitted).

Pursuant to these conclusions, a preliminary injunction was issued setting forth procedures for reinstatement of benefits to class members who had been terminated because of the Secretary's arbitrary, capricious and illegal actions. *Id.* at 494–96.

**D.**

Immediately after the issuance of the preliminary injunction opinion in this case, on April 30, 1984, the Supreme Court and the Sixth Circuit issued four opinions in cases involving the SSA. The Secretary moved for a stay pending appeal.

Analysis of the motion began by noting that on May 14, 1984, *Haynes v. Secretary of Health and Human Services,* 734 F.2d 284 (6th Cir.1984), explicitly reaffirmed the Sixth Circuit's adherence to *Hayes* and the presumption of continued disability. Next, the Court held that nothing in *Heckler v. Ringer,* 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984), provided any support for the Secretary's contention that class members had failed to satisfy the exhaustion requirement under § 405(g). *See Holden,* 584 F.Supp. at 499. Finally, regarding the sixty-day requirement, the Court held that the Supreme Court's first three rulings in *Heckler v. Lopez,* 463 U.S. 1328, 104 S.Ct. 10, 77 L.Ed.2d 1431 (1983) (Rehnquist, Circuit Justice), 464 U.S. 879, 104 S.Ct. 221, 78 L.Ed.2d 217 (1983), and —— U.S. ——, 104 S.Ct. 2164, 80 L.Ed.2d 548 (1984), required that a stay pending appeal be issued "with respect to the claims of class members whose benefits were terminated before July 3, 1983, or who completed the administrative process before July 3, 1983," 584 F.Supp. at 503, but that those opinions did not otherwise undermine the propriety of a class certification and issuance of a preliminary injunction.

**E.**

The Secretary appealed, but Congressional action during the pendency of the appeal prompted both sides to seek a remand of all class members' claims to the Secretary. The remand opinion, *Holden v. Heckler,* 615 F.Supp. 682 (N.D. Ohio 1985), stated:

> On October 9, 1984, the President signed the Social Security Disability Benefits Reform Act of 1984 ("the Act"), Pub.L. No. 98–460, 98 Stat. 1794 (1984). Portions of the Act codified the "medical improvement" standard for reviewing disability benefits terminations. In addition, §§ 2(d)(2)(C) and 2(d)(3) of the Act provide that district courts shall remand to the Secretary the cases of persons whose benefits have been terminated and who were named and unnamed members of a "medical improvement" class action pending as of September 19, 1984. The Secretary is to notify class members of their rights under the Act; they in turn may request a review of their case and a restatement of benefits pending the Secretary's initial redetermination.

Interpreting the Act, the Supreme Court has directed district courts to remand two pending class actions to the Secretary for review pursuant to the Act. *Heckler v. Lopez*, ___ U.S. ___, 105 S.Ct. 583 [83 L.Ed.2d 694] (1984); *Heckler v. Kuehner*, ___ U.S. ___, 105 S.Ct. 376 [83 L.Ed.2d 312] (1984). Both remand orders recognize the district court's continuing jurisdiction following remand. Consistent with the Act, the Sixth Circuit Court of Appeals has directed this Court in this action "to remand to the Secretary for further consideration under the Act." *Brest v. Secretary of Health and Human Services*, 754 F.2d 372 (6th Cir.1984). Upon consideration of the Act, the Supreme Court rulings, the Sixth Circuit's mandate, the arguments raised at a status conference on January 11, 1985, and the proposed orders subsequently submitted by counsel, it is hereby ordered that:

(1) The case of named plaintiff Larry McGinty is remanded to the Secretary for review pursuant to § 2(d)(2)(C) of the Act;

(2) The cases of the unnamed class members are remanded to the Secretary for review pursuant to § 2(d)(3) of the Act;

(3) The partial stay pending appeal entered by this Court on May 29, 1984 is vacated; and

(4) This Court retains jurisdiction to take other actions appropriate in light of the Act. Within fourteen (14) days, the Secretary shall either (1) respond to all issues in the plaintiffs' motion for summary judgment and remand which have not been mooted by this order, or (2) submit a pleading supporting her contention that this action should be dismissed without prejudice. If the Secretary files a motion to dismiss, the plaintiffs shall respond within ten (10) days thereafter.

*Id.* at 683–684 (footnotes omitted).

When the Secretary appealed an order denying a stay pending appeal of another order directing the issuance of appropriate notice of the remand to class members, the Sixth Circuit summarily denied the request for a stay pending appeal and reaffirmed this Court's continuing jurisdiction. *Holden v. Heckler*, No. 85–3128 (6th Cir. Feb. 15, 1985) (Jones, J.). The Secretary then dismissed her appeal. She did, however, move to dismiss this action based on an alleged lack of district court jurisdiction. In light of the clear appellate decisions, on May 9, 1985 this Court denied her motion, granted the plaintiffs' motion for summary judgment, and entered a final remedial order. *Holden v. Heckler*, 615 F.Supp. 684, 683–684, (N.D. Ohio 1985).

### III.

■ The Court now examines in detail the Secretary's arguments that the position of the United States was "substantially justified."

A.

Much of the Brief of Defendant in Opposition to Plaintiff's Application for Attorneys' Fees ("Government Brief") deals with jurisdictional issues. Her first set of arguments concerns her objections to this Court's jurisdiction over a class action under 42 U.S.C. § 405(g):

The government in the instant case submitted three "major" briefs to the Court. In her Memorandum in Opposition to the Plaintiffs' Joint Motion for Class Certification (filed March 9, 1984), Memorandum in Opposition to Plaintiffs' Application for a Preliminary Injunction (filed June 28, 1984), and her Motion for Stay (filed May 9, 1984), the Secretary raised arguments contesting whether the Court had jurisdiction over the claims of many members of the classes eventually certified by the Court on April 30, 1984. The Court initially ruled against the Secretary's jurisdictional arguments, but after decisions were announced by the Supreme Court in *Heckler v. Lopez*, ___ U.S. ___, 104 S.Ct. 2164 [80 L.Ed.2d 548] (1984) (Court's refusal to vacate stay entered by Justice Rhenquist [sic]), *Heckler v. Ringer*, 466 U.S. 602, 104 S.Ct.

2013 [80 L.Ed.2d 622] (1984), and *Heckler v. Day*, 467 U.S. 104, 104 S.Ct. 2249 [81 L.Ed.2d 88] (1984), the Court, on May 29, 1984, issued an Order staying implementation of the April 30 Order as to a part of the class certified on April 30. This decision was based upon the same jurisdictional arguments which the Secretary had been raising since the beginning of the litigation. The only difference was that the Secretary was now able to point to the Supreme Court's refusal to vacate Justice Rhenquist's [sic] stay as judicial authority for arguments originally based upon the language of the statutes in question. In deciding the question of the award of EAJA fees, the Court cannot overlook its own grant of a stay, or that the Supreme Court has issued a stay in a similar case, when the Court comes to determine whether the litigation position was "substantially justified," *Dubose v. Pierce*, 761 F.2d 913, 919–20 (2d Cir. 1985). Nor should the Court overlook the fact that although classes of plaintiffs fared well in their respective district courts when challenging the medical improvement standard, appellate courts have, in many cases, reerected the jurisdictional walls knocked down by those district courts.

Government Brief at 3–5 (footnote omitted).

None of these arguments is persuasive. First, the overwhelming majority of the Secretary's myriad jurisdictional arguments under § 405(g) were unjustified at the time they were made and have remained unjustified throughout this entire action. Reviewing once more the presentation, exhaustion, and sixty-day requirements indicates first that the Secretary's argument on presentation possessed no reasonable basis in *Weinberger v. Salfi* or *Mathews v. Eldridge* and contradicted the views of every court which had addressed the issue in the medical improvement context. The same is true for the exhaustion requirement. Nothing in *Lopez, Ringer,* or *Day* vindicated her position in any way. *Holden v. Heckler*, 584 F.Supp. at 498–99. With respect to the sixty-day requirement,

the Secretary confuses the Supreme Court's April 30, 1984 opinion in *Heckler v. Lopez*, —— U.S. ——, 104 S.Ct. 2164, 80 L.Ed.2d 548 (1984) (granting in part and denying in part the Secretary's application for stay of Ninth Circuit decision pending filing and final disposition of petition for writ of certiorari), with the October 11, 1983 opinion, 464 U.S. 879, 104 S.Ct. 221, 78 L.Ed.2d 217 (1983) (denying motion to vacate stay previously entered by Circuit Justice Rehnquist, 463 U.S. 1328, 104 S.Ct. 10, 77 L.Ed.2d 1431 (1983)). The three *Lopez* opinions are discussed in detail in the opinion granting a partial stay of the injunction pending appeal, *Holden*, 584 F.Supp. at 500–01, and need not be interpreted again here. It is sufficient to note that, based on the April 30, 1984 order in *Lopez*, this Court entered (and later vacated) a partial stay of its preliminary injunction with respect to one portion of the class. Neither the Supreme Court nor the Sixth Circuit has ever issued a substantive ruling sustaining the Secretary's position on the sixty-day rule, and the weight of the circuit court opinions is against her. *Johnson v. Heckler*, 769 F.2d 1202, 1208 (7th Cir.1985) (and Second, Seventh, Eighth and Ninth Circuit cases cited therein). Moreover, a summary order such as the partial stay entered in *Lopez* is not to be construed as a substantive ruling changing previous case law. *Mandel v. Bradley*, 432 U.S. 173, 97 S.Ct. 2238, 53 L.Ed.2d 199 (1977).

■ Nonetheless, assuming *arguendo* that the *Lopez* decision demonstrates that the Secretary's position on the sixty-day rule was non-frivolous with respect to one portion of the class, that alone does not demonstrate that her overall position on jurisdiction was substantially justified. This Court believes that it was not. Further, it agrees with the cases cited by plaintiffs holding that a plaintiff's failure to prevail on one small issue does not defeat an EAJA fee application. In *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Court promulgated

guidelines for assessing fee applications under 42 U.S.C. § 1988, and wrote:

Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.... Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

*Id.* at 435, 103 S.Ct. at 1940 (citation and footnote omitted). Lower courts have appropriately adopted this principle in EAJA cases. *Citizens Council of Delaware County v. Brinegar,* 741 F.2d 584 (3d Cir. 1984); *American Academy of Pediatrics v. Heckler,* 580 F.Supp. 436 (D.D.C.1980). In short, the government's success concerning one small part of its jurisdictional argument does not render either the Secretary's underlying position or the government's overall litigating position substantially justified.

The second portion of the Secretary's jurisdictional argument is that "appellate courts have, in many cases, re-erected the jurisdictional walls knocked down by those district courts." This statement is grossly misleading. The Secretary relies upon cases in which medical improvement class actions were remanded to district courts for further proceedings in light of the 1984 Act. *Hyatt v. Heckler,* 757 F.2d 1455 (4th Cir.1985); *Pulaski v. Heckler,* 751 F.2d 943 (8th Cir.1984). These cases did not "re-erect jurisdictional walls" such as those "knocked down" by this Court. Rather, they remanded two class actions to the Secretary for further proceedings under the Act—a statute which explicitly codified the medical improvement standard articulated and enforced by this and other courts, and which did not vindicate any of the

Secretary's original, unfounded jurisdictional arguments. Remands pursuant to the Act are simply irrelevant to the propriety of the contentions propounded by the Secretary months before the statute was passed by Congress and signed into law by the President. Nor is the summary, *per curiam* stay issued on July 1, 1985 in *Heckler v. City of New York,* — U.S. ——, 105 S.Ct. 3552, 87 L.Ed.2d 671 (1985) (partial stay of court of appeals judgment, 742 F.2d 729 (2d Cir.1984), pending filing and disposition of writ of certiorari), at all probative. Arguments that these cases somehow retroactively render the Secretary's position throughout this litigation substantially justified flirt with the boundaries of Fed.R.Civ.P. 11.

B.

The remainder of the Secretary's "substantial justification" argument concerns her position on the medical improvement standard itself:

The vast majority of time devoted to the "merits" of the case (the medical improvement standard itself) by the government was spent defending the Secretary's right to promulgate regulations and attempting to convince the Court that the Secretary was not "non-acquiescing" in Sixth Circuit law alleged to be settled since *Hayes v. Secretary of Health, Education and Welfare,* 656 F.2d 204 (6th Cir.1981). Regardless of the fact that the Court adopted neither of these arguments, it cannot be said that there was no substantial justification for making each of them.

The Sixth Circuit Court of Appeals has recently written in its *Trident Marine* opinion:

At trial, the government argued that SBA's interpretation of its own regulation was entitled to deference and that the Court should not substitute its judgment on the sufficiency of the protest for the SBA's judgment. Although the district court did not accept the government's claim, we agree with the district court that this is a substan-

tial argument to justify the government's position. The law is well settled that federal courts should accord great deference to an agency's interpretation of its own regulations. Based on ... precedent the government had a strong argument that Zenith's protest was sufficient.

*Trident Marine, supra,* at 981 (citations omitted).

It does not seem, then, that the government's litigation position seeking recognition of the Secretary's right to promulgate regulations can be seen as anything less than substantially justified.

Nor can the government be taken to task for not "caving-in" to a grant of relief to a statewide class based upon *Hayes.* The government still disputes whether *Hayes* supported the various propositions of law for which it was advanced, but even it it did support those legal conclusions, the government is entitled to re-litigate those questions without automatically running afoul of the EAJA substantial justification standard.

At issue in *Wyandotte Savings Bank v. NLRB,* 682 F.2d 119 (6th Cir.1982), was an application for EAJA fees made on behalf of a party who had prevailed in litigation against the NLRB. The Court of Appeals, ruling on the merits of the litigation, had determined that its own opinion in another case was controlling, and held adversely to the government. On the question of fees, the Court found:

The mere fact that the NLRB was the losing party or the fact that the NLRB's position was contrary to prior Sixth Circuit precedent does not mean that the Board was not substantially justified in seeking enforcement of its order.

*Wyandotte Savings Bank, supra,* 682 F.2d at 120.

In light of the foregoing, the government's position was substantially justified. Plaintiffs' counsel are therefore not entitled to fees and other expenses under 28 U.S.C. § 2412(d).

Government Brief at 5–6.

This Court once again deals with the Secretary's arguments one-by-one, beginning with her strange contention that her refusal to apply the medical improvement standard articulated in *Hayes* was not "non-acquiescence" in defiance of Sixth Circuit law. In her brief submitted following the preliminary injunction hearing in this case, the Secretary explicitly and unequivocally asserted her right to refuse to apply Sixth Circuit rulings to other cases involving identical questions of law: "But since those are different claims asserted by different parties, *res judicata* does not compel the Secretary to follow the results obtained in those cases." Post-Hearing Brief at 27 (quoted in *Holden,* 584 F.Supp. at 490). This is the essence of "non-acquiescence." As previously stated, 584 F.Supp. at 490, the Secretary's argument was, and is, utterly meritless. There was no substantial justification for the agency's position that it could ignore pronouncements of the Sixth Circuit and no substantial justification for the litigating position defending its right to do so.

Furthermore, this was not a case challenging "the Secretary's right to promulgate regulations." Nowhere in any of their pleadings did the plaintiffs assert such a position, which would, of course, contradict fundamental principles of modern administrative law. They merely challenged the Secretary's absurd claim that her interpretations of Social Security statutes took precedence over the decisions of federal district and circuit courts. *See id.* at 474–75. Once again, there was no substantial justification for the agency's substantive position or its litigation stance.

Finally, the Secretary submits that "the government is entitled to re-litigate [previously-decided issues] without automatically running afoul of the EAJA substantial justification standard." This is true but not germane. *Wyandotte Savings Bank v. NLRB* did hold that "[t]he mere fact that the NLRB was the losing party or the fact that the NLRB's position was contrary to prior Sixth Circuit precedent does not mean that the Board was not substantially justified in seeking enforcement of its order."

*Id.* at 120. In *Wyandotte*, however, the NLRB issued an order to bargain and sought Sixth Circuit enforcement in a test case intended to seek reversal of a prior Sixth Circuit ruling. The Board's position was consistent with that of two other circuits and had the support of two Sixth Circuit judges. Ultimately, the NLRB did not prevail, but in rejecting the prevailing party's application for EAJA fees the court held "that the position taken by the Board was a reasonable attempt to reopen a closed question." *Id.* Here, by contrast, the Secretary did not make any attempt to reopen the question decided in *Hayes* and the other medical improvement cases. Instead, she simply refused to heed precedent, and left it to the individual litigants in social security cases—and ultimately to the class in this case—to force her to obey the law. The comparison to *Wyandotte*, a legitimate test case, is therefore inapposite. Rather, the appropriate comparison is to *Kitchen Fresh* and *Beverly Enterprises*, cases in which the Sixth Circuit vigorously refuted an agency's position that it could ignore appellate precedent without challenging that precedent in a test case. *See Holden*, 584 F.Supp. at 490–91. This Court again concludes that neither the agency position nor the litigating position was substantially justified.

IV.

Under the standards enunciated in the EAJA Amendments, and even under the "mere reasonableness" standard previously utilized by the Sixth Circuit, the Secretary's actions giving rise to this lawsuit and her litigating position throughout it[3] have not been substantially justified. Accordingly, attorneys' fees, costs and expenses under EAJA will be awarded. The government may conduct limited discovery with respect to the amounts sought and shall submit its supplemental response to plaintiffs' application within thirty (30) days of this memorandum and order.

IT IS SO ORDERED.

---

**3.** This Court wishes to emphasize that it intends no criticism of the United States Attorney for the Northern District of Ohio or the Assistant United States Attorneys who represented the Secretary in this action. The lengthy proceedings demonstrated repeatedly that the Secretary's litigating position was formulated primarily by Social Security officials and counsel in Baltimore and Washington and by attorneys in the Civil Division of the Justice Department. Local counsel who carried out the orders of their superiors and the mandates of their agency client consistent with their professional duty under Canon 7 of the *Model Code of Professional Responsibility* did not thereby acquire responsibility for the untenable positions they were forced to advocate.