**Joseph TRICHILO, Plaintiff-Appellee,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellant.**

**No. 1129, Docket 87–6023.**

United States Court of Appeals, Second Circuit.

Argued May 14, 1987.

Decided June 26, 1987.

Jay S. Bybee, Appellate Staff Civil Div., U.S. Dept. of Justice, Washington, D.C. (Richard K. Willard, Asst. Atty. Gen., William Kanter, U.S. Dept. of Justice, Civil Div., Washington, D.C., Frederick J. Scullin, Jr., U.S. Atty. for the N.D.N.Y., of counsel), for defendant-appellant.

James M. Baker, Syracuse, N.Y. (Baker, Clark & Satter, of counsel), for plaintiff-appellee.

Before VAN GRAAFEILAND, PRATT, and ALTIMARI, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

This appeal raises two issues under the Equal Access to Justice Act ("EAJA") that have divided the courts that have considered them. First, the secretary of the Department of Health and Human Services ("the secretary") argues that the district court erred in awarding plaintiff Trichilo attorney's fees under 28 U.S.C. § 2412(d) in the amount of $88 per hour, based on the statutory rate of $75 per hour plus a cost-of-living adjustment measured from October 1981, contending that any cost-of-living increase should instead be measured from 1985, when the statute was reenacted after having lapsed in 1984. Second, the secretary challenges the district court's award of counsel fees for the time spent litigating the fee issue itself, arguing that "fees for fees" are not available when the government's position on the fee issue, looked at in isolation, is "substantially justified". We reject the interpretation of the statute offered by the secretary on both issues, and affirm the judgment of the district court.

## BACKGROUND

The merits of the underlying dispute between Trichilo and the secretary over Tri-

chilo's entitlement to disability benefits are irrelevant to this appeal, since the secretary now concedes that the department's position was not "substantially justified". Under the statute, therefore, counsel fees for plaintiff are authorized. 28 U.S.C. § 2412(d). Counsel for Trichilo submitted to the district court a fee application claiming 46.9 hours, including 4.8 hours spent preparing the motion for fees, at an hourly rate of $88. The $88 hourly rate represented a 17% cost-of-living increase over the $75 maximum fixed in the original statute, an increase that counsel justified by submitting documentation relating to changes in the Consumer Price Index ("CPI") since 1981. Later, counsel requested fees for the additional 8.3 hours spent in responding to the government's opposition to the fee application. Thus, the total number of hours claimed was 55.2.

The secretary opposed this application on several grounds, only one of which is relevant on appeal. The secretary argued that the cost-of-living adjustment allowed by § 2412(d) should be measured from 1985, the date of the reenactment of the statute, rather than 1981, when congress originally established the $75–per–hour cap on attorney's fees but gave district courts discretion to provide for cost-of-living adjustments. (The "fees for fees" issue was not raised by the secretary below.)

Noting a split in authority on the question of whether to measure a cost-of-living increase from 1981 or 1985, the district court ruled that the earlier date was appropriate. *Trichilo v. Secretary of Health & Human Services,* 647 F.Supp. 125 (N.D.N. Y.1986). Chief Judge Munson followed the reasoning of the D.C. circuit in *Hirschey v. F.E.R.C.,* 777 F.2d 1, 5 (D.C.Cir.1985), and rejected a contrary position of the sixth circuit in *Chipman v. Secretary of Health & Human Services,* 781 F.2d 545, 547 (6th Cir.1986). Perhaps reflecting how often the government takes positions that are not "substantially justified", this question has also been addressed by numerous other courts. Cases agreeing with *Hirschey* include *Sierra Club v. Secretary of the Army,* 820 F.2d 513, 520–23 (1st Cir.

1987); *Ruiz v. Bowen,* No. 84–C–7394 (N.D.Ill. Feb. 20, 1987) [Available on WESTLAW, DCT database] (available on LEXIS); *Ford v. Bowen,* No. 83–C–9243 (N.D.Ill. Jan. 8, 1987) [Available on WESTLAW, DCT database] (available on LEXIS); *Jackson v. Heckler,* 629 F.Supp. 398 (S.D. N.Y.1986); *Metzcher v. Bowen,* No. 85–2233 (E.D.Pa. July 7, 1986) [Available on WESTLAW, DCT database] (available on LEXIS). Other courts have adopted the reasoning of *Chipman; Arroyo v. Heckler,* No. 84–0723 (E.D.Pa. Feb. 12, 1987) [Available on WESTLAW, DCT database]; *Barry v. Heckler,* 638 F.Supp. 444 (N.D. Cal.1986); *Bunn v. Bowen,* 637 F.Supp. 464 (E.D.N.C.1986); *McKinnon v. Bowen,* No. 85–4622 (E.D.Pa. Dec. 31, 1986) [Available on WESTLAW, DCT database] (available on LEXIS); *Allen v. Schweiker,* No. 83–1964 (E.D.Pa. July 16, 1986) [Available on WESTLAW, DCT database] (available on LEXIS), *appeal docketed,* No. 86–1705 (3d Cir.1986); *Trahan v. Regan,* 625 F.Supp. 1163 (D.D.C.1985). Having reviewed these cases, we conclude that the district court correctly adopted the position of *Hirschey* and its progeny in awarding counsel his requested $88 per hour fee.

## DISCUSSION

In 1980 congress adopted the EAJA to deal with the perceived problem "that certain individuals * * * may be deterred from seeking review of, or defending against unreasonable governmental action because of the expense involved in securing the vindication of their rights * * *. The purpose of this bill is to reduce the deterrents * * * by [awarding] attorney fees, expert witness fees and other expenses against the United States, unless the Government action was substantially justified." H.R.Rep. No. 96–1418, 96th Cong., 2d Sess. 5–6, *reprinted in* 1980 U.S.Code Cong. & Ad.News 4953, 4984. The EAJA, codified at 28 U.S.C. § 2412, placed a cap of $75 per hour on recoverable attorney's fees, 28 U.S.C. § 2412(d)(2)(A), "unless the court determines that an increase in the cost-of-living * * * justifies a higher fee." *Id.*

Courts implementing the cost-of-living provision routinely set the date from which such adjustments should be calculated as October 1, 1981, the effective date of the EAJA, *see, e.g., Action on Smoking and Health v. C.A.B.*, 724 F.2d 211, 218 (D.C.Cir.1984), and we agree that October 1981 is the appropriate measuring point for the first incarnation of the EAJA.

By its terms, however, the EAJA expired in 1984, the result of a built-in sunset provision. The legislative history makes clear that, as originally enacted, the EAJA was "intended to be a limited experiment" the effects of which would be evaluated at the end of the trial period. *See* 1980 U.S.Code Cong. & Ad.News, *supra*, at 4995–96. Toward the end of the three year experiment, congress surveyed the results and, finding them good, approved a continuation of the EAJA, *see* H.R.Rep. No. 99–120, 99th Cong., 1st Sess. 6, *reprinted in* 1985 U.S. Code Cong. & Ad.News 132, 134. President Reagan vetoed the bill, but in 1985 signed a reenactment of the EAJA that did become law.

The exact means used by congress to reenact the EAJA are a matter of dispute between Trichilo and the secretary, but we regard their debate about whether congress amended the original act by repealing the repealer and thus revived the law, or instead reenacted the substantive provisions as new law and then made them permanent by repealing the repealer, as much ado about little, and wholly academic. *See Sierra Club*, 820 F.2d at 521 n. 7. We assume, without getting into the twists and turns of the legislative labyrinth, that congress passed a "new" EAJA in 1985, but that the only differences between it and the "old" EAJA relevant for present purposes are that it is permanent, because congress did, in fact, repeal the sunset provision, and that congress left untouched the provision of § 2412(d)(2)(A) allowing for a cost-of-living increase from a $75 base cap.

The upshot of this history, according to the secretary, is that congress decided in 1985 to leave the $75 cap intact, and start the cost-of-living "meter" over again, with increases measured from 1985 dollars. *See Bunn*, 637 F.Supp. at 475 ("Since Congress chose not to increase the $75 cap [in 1985], despite the national rise in the cost of living since the EAJA's original enactment in 1980, the courts are not at liberty to do so."). We reject this argument as contrary to the legislative intent, unjustified under tenets of statutory construction, and inevitably bound to lead to incongruous results.

First, the legislative intent is clear in at least two respects. Congress desired, both in 1980 when it passed § 2412(d) on an experimental basis, and in 1985 when it revived the section and made it permanent, to build a cost-of-living escalator into the cap on recoverable fees. This manifests an obvious concern with inflation. In addition, it is clear that in 1985 congress meant to reenact the EAJA as if it had never lapsed. The reenactment was effected by Pub.L. No. 99–80, which provided, in § 6(a), that § 2412(d) "shall be effective on or after the date of the enactment of this Act *as if [it] had not been repealed*" by the sunset provisions of the original EAJA. (Emphasis added). With these two legislative purposes in mind, we turn to an assessment of what congress did in 1985.

The secretary would have us conclude that by the simple act of continuing to allow cost-of-living increases on the statutory cap on attorney's fees without increasing the $75 ceiling contained in the statute, congress nullified the same intent (to compensate for inflation) it had manifested five years earlier. This we decline to do. What went on when congress enacted the EAJA in 1985 is fairly obvious. Contrary to the implicit suggestion of the secretary, congress made no decision that $75, measured in 1985 dollars, was still an appropriate cap and, in effect, to roll back the increases that courts had regularly given to keep pace with inflation between 1981 and 1985. Rather, congress simply put back in place the statutory scheme that had been allowed to lapse, without giving specific attention to the dollar amount used both as the ceiling on fees and as the base for adjustments for inflation. But the reenacted scheme included the cost-of-living adjustments that had to that point been authorized under the

1981 act. At least as plausible as the secretary's hypothesis is the notion that congress, knowing that the cost-of-living adjustments had been implemented by courts enforcing the EAJA, felt no need to adjust the cap upward to reflect 1981–1985 inflation. Indeed, given the express language in the law that the "new" § 2412(d) be effective "as if [it] had not been repealed", the latter possibility seems the more likely.

We could adopt the secretary's position only if we were to conclude that congress meant to roll back the 1981 figure, deciding, retrospectively, that in 1981 dollars, only $64.89 (the equivalent of $75 in 1985 terms) was appropriate. But there is nothing to show that congress made any such retrospective decision. Nor are we told why the 1985 congress, obviously concerned enough about inflation to reenact the cost-of-living escalator, would want to ignore the inflation that had occurred between 1981 and 1985.

The secretary's argument rests on a flawed assumption. Simply because the reenactment of the EAJA was effective in 1985 does not mean that the cost-of-living provision must be measured from that date. Rather, we look to the substance of what congress actually did in 1985, which was to revive a statute and provide in so doing that it should be treated as if it had not lapsed in the first place. While it is true that congress could have changed the $75 figure and adopted a higher base cap to reflect the five years of inflation, its failure to do so does not indicate a desire not to provide for those years. Instead, it indicates that congress provided for them by the alternative means of directing that § 2412(d) be effective as if it were the original statute, the terms of which did provide for increases from 1981 on.

Our conclusion is consistent with sound tenets of statutory construction. First, we will not interpret a statute so that some of its terms are rendered a nullity. Cf. Carcamo-Flores v. I.N.S., 805 F.2d 60, 66 (2d Cir.1986) ("We are loath to assume that congress intended the * * * language as mere surplusage."). But this would be the result of the secretary's position with regard to the language in § 6(a) of Pub.L. No. 99–80 that the reenacted law should be effective as if never repealed, language the secretary inexplicably ignores both in his main brief and in his reply brief.

In addition, we must assume that congress was aware of the judicial constructions of § 2412(d) that set the starting date for assessing inflationary increases as October 1, 1981. Cf. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran, 456 U.S. 353, 382 n. 66, 102 S.Ct. 1825, 1841 n. 66, 72 L.Ed.2d 182 (1982). "[W]here, as here, Congress adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law." Lorillard v. Pons, 434 U.S. 575, 581, 98 S.Ct. 866, 870, 55 L.Ed.2d 40 (1978). A fortiori, where congress gives explicit instructions that it is reenacting a statute virtually intact, as if it did not even have to be reenacted, we assume it knew how the statute had been interpreted, and intended that it continue to be construed in the same fashion, including the October 1, 1981 base on the attorney's fee cap. See also 2A C. Sands, Sutherland on Statutory Construction § 49.09, at 400 (4th ed. 1973).

We also note that to adopt the secretary's position would be to sanction absurd results. A case begun on September 30, 1984, before the expiration of the experimental phase of § 2412(d), would result in attorney's fees of $75 per hour, plus a cost-of-living increase dated from October 1, 1981. The resultant fee would be approximately $85–$90 per hour, depending on the exact dates and figures the attorney involved was able to document. A case brought a day later, after the original § 2412(d) had expired, but covered by the retroactive effect congress gave to the new § 2412(d) when it passed the act in 1985, would result in attorney's fees of only $75 per hour. See, e.g., Allen v. Schweiker, supra ("It may be argued that plaintiff's attorney may be entitled to a very nominal cost of living adjustment from August 5, 1985 to March, 1986. Seeing that this period encompasses less than one year and

would entail such a nominal fee enhancement", no cost-of-living increase will be allowed.). This would hardly give full effect to the congressional mandate that the reenacted § 2412(d) be treated as if it had never lapsed. *See Sierra Club*, 820 F.2d at 523 ("interpretation [of § 2412(d) ] hawked by the government * * [is] paradoxical [and] would make very little sense").

We note in passing that while we reject the reasoning of the sixth circuit in *Chipman*, we do so on a slightly different basis than did the district court here and the D.C. circuit in *Hirschey*. In our view, it is irrelevant whether congress reenacted or merely amended § 2412(d), since even if the sixth circuit is correct that the statute was reenacted, the background and substance of that legislative action convince us that congress intended the measuring point for inflationary increases in the attorney's fee cap to be October 1, 1981.

■ In addition to contesting the cost-of-living adjustment awarded by the district court, the secretary also challenges, in an argument not raised below, the court's inclusion of a total of 13.1 hours spent by Trichilo's counsel in preparing his fee application (4.8 hours) and in opposing the government's attempt to limit his fees to $75 per hour (8.3 hours). The secretary contends that there should be no "fees for fees" under the EAJA unless the government's position on the fees question is not substantially justified, and that therefore Trichilo is entitled to only 42.1 hours, rather than the 55.2 hours assessed by the district court. We conclude that where the government's position in the underlying dispute has been found to be, or as here, conceded to be, not substantially justified, the reasonable attorney's fee plaintiff is entitled to recover should encompass the time spent by counsel litigating the fee issue itself. The merits of the government's stance on the fee issue are therefore irrelevant.

To begin with, the very purpose of the EAJA is to ensure that persons aggrieved by unreasonable governmental actions are not prevented from vindicating their claims by the potentially high costs involved in doing so. Since the statute primarily assures prevailing plaintiffs their reasonable attorney's fees, it would be ironic if claiming those very fees—which would have been unnecessary if not for the governmental action—was the one act for which a claimant could not receive compensation. Since the purpose of the EAJA is to remove counsel fees as an impediment to challenging unreasonable and unjustified governmental actions, where a governmental action has been shown to have been unjustified, there should be as little disincentive for plaintiffs to obtain attorney's fees as there is for them to challenge the action itself. The government asks us "to treat the EAJA application as part of counsel's cost of doing business." To do so, however, would leave it in the power of the government, which already had been unjustified in its actions toward plaintiff, to so raise the cost of plaintiff's counsel's "doing business" simply by strenuous resistance to all fee applications as to discourage or economically prevent a plaintiff from litigating against the government in the first place. We regard it as more consistent with the congressional purpose to treat plaintiff's fee application as part of the government's cost of taking positions that are not substantially justified.

The secretary points to several cases in which courts can be read to have denied an application of "fees for fees". *See, e.g., Rawlings v. Heckler*, 725 F.2d 1192, 1196 (9th Cir.1984). In the main, however, those cases cited by the government were decided before the reenactment of the EAJA in 1985. While, as we have noted, congress made no substantive changes in the cost-of-living escalator built into the attorney's fee cap, congress did in 1985 make an important change with regard to the substantive question of when attorney's fees would be recoverable, and in so doing, made stronger the case for allowing to prevailing plaintiffs their attorney's fees for the fee application itself.

The 1981 EAJA allowed attorney's fees to be recovered when the government's "position" was not substantially justified. Courts had been divided on whether the "position" of the government referred to

was the position reflected in the underlying governmental action being challenged, or in the litigation stance adopted by the government. *Compare Boudin v. Thomas,* 732 F.2d 1107, 1115 (2d Cir.1984) ("We hold that 'the position of the United States' refers only to the government's position when it litigates over an agency action.") *with Rawlings,* 725 F.2d at 1195–96 (reaching opposite conclusion). The reenacted EAJA, however, definitively settles this question:

"[P]osition of the United States" means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based * * *.

28 U.S.C. § 2412(d)(2)(D), and broadens the scope of the availability of attorney's fees beyond that recognized by this court in *Boudin.* *See* 1985 U.S.Code Cong. & Ad. News, *supra,* at 137, 140–41 ("In clarifying the 'position' term, the Committee expressly rejects the [interpretation] that the only government 'position' to be scrutinized in the context of an EAJA case is that taken in the litigation itself.").

Severing separate parts of the litigation for purposes of determining the availability of counsel fees is inappropriate in view of this congressional mandate to look not at the government's litigation position, but rather at the underlying action that spawned the litigation in the first place. Were the government's litigation position the sole criterion for the award of fees, it might be justified to look at different phases of the litigation separately to determine whether the litigation position in each phase was "substantially justified". But since the litigation position is no longer the relevant criterion, there is no reason to divide up phases of the litigation for examination. In short, if the underlying agency action was not substantially justified, the victim of that unjustified action is entitled to all reasonable attorney's fees, including those incurred on the fee application. *See Russell v. Heckler,* 814 F.2d 148, 155 (3d Cir.1987); *Haitian Refugee Center v. Meese,* 791 F.2d 1489, 1500–01 (11th Cir. 1986) ("[i]n order to grant plaintiffs full vindication of their rights under EAJA", attorney's fees awarded for preparation of fee application), *vacated,* 804 F.2d 1573 (11th Cir.1986) (*per curiam*); *cf. Cinciarelli v. Reagan,* 729 F.2d 801, 810 (D.C.Cir. 1984) (awarding fees for fees avoids the "Kafkaesque judicial nightmare" of an infinite regression of suits to recover fees for fees and an assessment in each of whether the immediately previous government opposition was "substantially justified"). Of course, the attorney's fees for litigating the fee application itself must themselves be reasonable, as must all claimed fees under the act. 28 U.S.C. § 2412(d)(2)(A). If counsel makes inflated or outrageous fee demands, the court could readily deny compensation for time spent in pressing them, since that time would not have been "reasonably spent".

We therefore affirm the award of attorney's fees for the full 55.2 hours claimed, including those claimed for preparation of and litigation over the claimed attorney's fees, and in the full claimed amount of $88 per hour. The judgment of the district court is affirmed.